DOROTHY GROSJEAN, as executrix and individually, of estate of George B. Grosjean, deceased, appellants, v. DR. J. H. SPENCER et al., appellees.

No. 51923.

(Reported in 140 N.W.2d 139)

FEBRUARY 8, 1966.

F. J. MacLaughlin, of Davenport, and William H. Wellons, of Muscatine, for appellants.

A. Wayne Eckhardt and Duane J. Goedken, both of Muscatine, for appellees.

MOORE, J.—This is a malpractice case originally brought against Dr. J. H. Spencer, a specialist in surgery, his associate Dr. E. R. Wheeler, Muscatine General Hospital, Muscatine County and two nurses. During trial plaintiffs dismissed as against all defendants except the two doctors. Plaintiffs allege defendant doctors were guilty of malpractice in connection with an operation upon George B. Grosjean for a tumor on his descending colon and his postoperative care and as a result thereof he developed peritonitis and died. Mrs. Grosjean's claim is for loss of consortium and medical expenses. At close of plaintiffs' case the trial court sustained defendants' motion for directed verdict and entered judgment thereon. Plaintiffs have appealed.

688

Plaintiffs assert the trial court erred in (1) directing a verdict against them, (2) sustaining defendants' objections to testimony of two witnesses, (3) sustaining defendants' motion to strike certain allegations of the petition and (4) overruling their motion for a new trial.

In considering the propriety of a directed verdict for defendants we must give plaintiffs' evidence the most favorable construction it will reasonably bear. Generally questions of negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Citation of authority is unnecessary. See rule 344(f)2 and 10, Rules of Civil Procedure.

On December 10, 1962, George B. Grosjean, 59, of previously good health, had abdominal gas pains and dispelled blood in his stool. The next day he went to Doctor Wheeler who directed him to Muscatine General Hospital for X rays on December 13. That afternoon Grosjean, hereinafter called plaintiff, at the request of Doctor Spencer, went to the doctors' office. He was accompanied by his wife, Dorothy. Doctor Spencer told plaintiff the X rays revealed a small tumor on his left colon and that an operation was necessary. Plaintiff expressed reluctance to have the operation at that time because all his children were coming home for Christmas. Doctor Spencer then informed plaintiff it should be taken care of at once and that the tumor might suddenly change and grow rapidly and cause a bowel obstruction. At this meeting Doctor Spencer drew a diagram (exhibit 15) showing the stomach, colon, bowel and appendix and placed marks on the colon showing the portion he intended to remove. Doctor Spencer explained the intended operation. Plaintiff then signed this consent: "Permission to operate. My consent is hereby given to my attending physician and the Muscatine General Hospital authorities to administer whatever anesthetics and to perform whatever operation is necessary upon me, in their opinion."

Mrs. Grosjean testified Doctor Spencer told plaintiff it did not amount to much but should be taken care of at once, he expected to remove 11 to 14 inches of colon, plaintiff could be home a few hours on Christmas to visit his family and would be back on his job in two or three weeks.

Defendants objected to Mrs. Grosjean relating any more of plaintiff's statements to Doctor Spencer as self-serving, incompetent, irrelevant and immaterial. The trial court sustained the objection. No offer of proof was made.

Doctor Spencer, assisted by Doctor Wheeler, performed the operation on plaintiff at Muscatine General Hospital on December 17. He met unexpected conditions and complications. The operation took over six hours.

Doctor Spencer was called as plaintiffs' witness. He described in detail the complications encountered and the surgery performed. His testimony is not disputed.

Doctor Spencer testified, as indicated by the diagram, exhibit 15, he made a cut through the middle of the transverse colon and a cut on the left descending colon immediately above the sigmoid colon. The piece of colon taken out amounted to three feet. He stated it was not possible to take out less than three feet because of the blood supply as otherwise gangrene would develop. He then intended to pull the transverse colon down and attach it to the sigmoid colon. This would have been the procedure and operation which he had explained to plaintiff. Unfortunately Doctor Spencer ran into unusual conditions and unexpected difficulty. He stated: "Most people have a loose transverse colon, but his transverse colon was rigid and could not be pulled down."

Doctor Spencer testified he was compelled to change his operating plan. He had a choice of performing a colostomy where the bowel comes out the abdominal wall or a colectomy. He performed the latter which would permit bowel movements through the anus. Doctor Spencer took out approximately three and a half feet of the right portion of the large colon and two and a half inches from the ileum (small bowel) and connected the ileum with the sigmoid. The joint is called the anastomosis. Rubber tubing was put in on the side where the loose ends were joined because, according to Doctor Spencer, ten percent of the people develop a leak and the material then runs out the tube. Near the end of the operation the attending nurses expressed some uncertainty as to sponge count. Doctor Spencer made an examination of plaintiff and took X rays to be certain none had

been left in his abdomen. The subsequent operation at Iowa City and postmortem examination conclusively disprove plaintiffs' claim of negligence in this regard.

The operation was completed at 6:30 p.m. Doctor Spencer returned to the hospital at 9 p.m. and found everything satisfactory. The rubber tubes were working and blood was draining. At 1:30 and 4:30 a.m. Doctor Spencer returned and gave plaintiff blood. He testified these complications were not unusual after a long operation. Thereafter both doctors were in regular attendance until plaintiff was taken to Iowa City on January 1, 1963.

The hospital chart together with testimony of attending nurses traces plaintiff's progress following the operation. He seemed to progress satisfactorily each day until near the end of the month. On Christmas, his eighth postoperative day, the nurse's chart entry states: "Condition much improved, patient cheerful, ate well, visited with family, patient not as jaundiced, a good day." Similar entries were made on the following days.

On January 1, the 15th postoperative day, plaintiff had a black tarry stool, appeared weak and nervous and then suddenly became unconscious. Oxygen was given and blood started. There was a large amount of red drainage and he expelled blood rectally. Plaintiff was immediately taken to the University Hospital at Iowa City. Doctor Spencer and a nurse attended him on the ambulance trip.

Upon arrival at Iowa City, Dr. Richard Liechty, a surgeon at the State University Hospital, conferred with Doctor Spencer and examined plaintiff. It was determined he had developed a gastric ulcer which was bleeding into the gastrointestinal tract.

Doctor Liechty assisted by two other doctors operated on plaintiff that day. Doctor Spencer was in attendance.

Doctor Liechty testified the operation confirmed the diagnosis made upon plaintiff's arrival at the hospital. He described his observations of the previous operation and stated: "With that much colon removed it can function normally. Often there is a little frequency of stools but we do this for certain diseases and they get along nicely."

Doctor Liechty testified on opening plaintiff he found a

small leak in the anastomosis through which intestinal contents and a good deal of blood were passing, acute and massive intestinal bleeding from an ulcer high in the stomach, fluid collections, evidence of hemorrhage along both sides of the abdomen and pelvis and extensive peritonitis. Peritonitis is an inflammation of the peritoneal cavity. It can be caused by any irritant, blood, air, bacteria, chemicals, gastric juices, bile or fecal material.

Doctor Liechty testified peritonitis is a leading cause of death in surgery wards and under the circumstance he stopped the bleeding and brought the small bowel outside the abdominal wall. Plaintiff died of peritonitis in the University Hospital on January 9, 1963.

On direct examination Doctor Liechty stated that where 18 inches of descending colon has been removed so it cannot be attached or joined the usual operation is probably a colostomy. He testified prior to Doctor Spencer's detailed description of the conditions found and the operation which he performed. As pointed out by defendants the reason for plaintiffs' question is unknown. No such operation was planned or performed. This testimony has no probative value here.

No expert testimony was offered indicating Doctor Spencer or Doctor Wheeler did not observe the usual medical practices in performing the operation or caring for plaintiff.

█ I. The general rule is that a physician and surgeon is required to exercise that degree of skill and care ordinarily used by similar specialists in like circumstances, having regard to the existing state of knowledge in medicine and surgery, not merely the average skill and care of a general practitioner. McGulpin v. Bessmer, 241 Iowa 1119, 1132, 43 N.W.2d 121, 128, and citations; Barnes v. Bovenmyer, 255 Iowa 220, 228, 122 N.W.2d 312, 316; 41 Am. Jur., Physicians and Surgeons, section 90; 70 C. J. S., Physicians and Surgeons, section 41.

█ In Johnson v. Van Werden, 255 Iowa 1285, 1290, 125 N.W.2d 782, 784, and Kirchner v. Dorsey & Dorsey, 226 Iowa 283, 290, 284 N.W. 171, 176, we quote the following from O'Grady v. Cadwallader, 183 Iowa 178, 192, 166 N.W. 755, 759: "There is no implied guaranty of results, and all the law de-

mands is that the practitioner bring to the service of his patient and apply to the case that degree of skill and care, knowledge and attention, ordinarily possessed and exercised by practitioners of the medical profession under like circumstances and in like localities; and it is the general holding of the courts that the bare fact that full recovery does not result, or that a surgical operation is not entirely successful, is not, in and of itself, evidence of negligence; and, in the absence of any showing from those learned in the profession that there was a failure to do that which ought to have been done in the treatment of the injury, or that there was that done which ought not to have been done in the treatment of the injury, there can be no recovery."

■ Ordinarily, evidence of the requisite skill and care exercised by a physician must be given by experts. Whetstine v. Moravec, 228 Iowa 352, 370, 291 N.W. 425, 434; Bartholomew v. Butts, 232 Iowa 776, 779, 5 N.W.2d 7, 9; Stickleman v. Synhorst, 243 Iowa 872, 878, 52 N.W.2d 504, 508; 41 Am. Jur., Physicians and Surgeons, section 129; 70 C. J. S., Physicians and Surgeons, section 62c(2); 81 A. L. R.2d 597, 601.

. We have recognized two exceptions to the rule requiring expert evidence in malpractice actions. Where a physician's lack of care is so obvious as to be within the comprehension of the layman and require only common knowledge and experience to understand, expert testimony is not necessary. Also where a physician injures a part of the body not under treatment expert evidence is not always required. Evans v. Roberts, 172 Iowa 653, 660, 154 N.W. 923, 926; Bartholomew v. Butts, 232 Iowa 776, 779, 780, 5 N.W.2d 7, 9; Wilson v. Corbin, 241 Iowa 593, 600, 41 N.W.2d 702, 705; Stickleman v. Synhorst, 243 Iowa 872, 879, 52 N.W.2d 504, 508; Daiker v. Martin, 250 Iowa 75, 81, 91 N.W.2d 747, 750, 751; Johnson v. Van Werden, 255 Iowa 1285, 1288, 125 N.W.2d 782, 783. The facts do not bring this case within either exception.

It is argued Doctor Spencer's assurance the operation did not amount to much, plaintiff would be home for a visit on Christmas and be back to work in two or three weeks and his failure to disclose the possibility plaintiff had cancer and the danger of peritonitis misled him into signing consent for the

operation and therefore the doctor was guilty of malpractice. Immediately after the operation Doctor Spencer advised Mrs. Grosjean plaintiff had cancer. The problem presented is whether Doctor Spencer disclosed to plaintiff sufficient information about the proposed operation to constitute informed consent.

Counsel have not called to our attention nor does our research reveal any case where we have considered this problem. It is the subject of the annotation in 79 A. L. R.2d 1028 from which it is clear the particular facts in each case must be carefully considered. The courts have expressed divergent views as to how far a surgeon should go in advising a patient of dangers involved in a proposed operation.

It is the duty of a physician and surgeon to act with the utmost good faith toward his patient. 70 C. J. S., Physicians and Surgeons, section 48m; 41 Am. Jur., Physicians and Surgeons, section 73.

In regard to the duty of a doctor to advise his patient as to probable consequences of a treatment and dangers connected with it, the author of an article in 41 Minnesota Law Review 381, 427, has this to say: "* * * The proper solution of this problem, in the opinion of the author, is to recognize that the doctor owes a duty to his patient to make reasonable disclosure of all significant facts, i.e., the nature of the infirmity (so far as reasonably possible), the nature of the operation and some of the more probable consequences and difficulties inherent in the proposed operation. It may be said that a doctor who fails to perform this duty is guilty of malpractice. * * *."

The author's views are cited and considered in Mitchell v. Robinson, Mo., 334 S.W.2d 11, 79 A. L. R.2d 1017; Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093; Woods v. Brumlop, 71 N. M. 221, 377 P.2d 520; Watson v. Clutts, 262 N. C. 153, 136 S.E.2d 617.

Citing Natanson v. Kline, supra, which reviews authorities from several jurisdictions, Williams v. Menehan, 191 Kan. 6, 8, 379 P.2d 292, 294, says: "* * * it is the duty of a doctor to make a reasonable disclosure to his patient of the nature and probable consequences of the suggested or recommended treatment, and to make a reasonable disclosure of the dangers within his knowl-

694

edge which are incident or possible in the treatment he proposes to administer. But this does not mean that a doctor is under an obligation to describe in detail all of the possible consequences of treatment. To make a complete disclosure of all facts, diagnoses and alternatives or possibilities which might occur to the doctor could so alarm the patient that it would, in fact, constitute bad medical practice." We believe this a sound rule.

Watson v. Clutts, 262 N. C. 153, 159, 136 S.E.2d 617, 621, states: "Difficulty arises in attempting to state any hard and fast rule as to the extent of the disclosure required. The doctor's primary duty is to do what is best for the patient. Any conflict between this duty and that of a frightening disclosure ordinarily should be resolved in favor of the primary duty. And yet, the consent of the patient or of someone duly authorized to consent for him, except in emergencies, is required before the operation is undertaken. The surgeon should disclose danger of which he has knowledge and the patient does not—but should have—in order to determine whether to consent to the risk."

██ How a physician chooses to discharge his obligations to a patient involves primarily a question of medical judgment. The record here discloses Doctor Spencer related his diagnosis and explained in detail the proposed operation. There is no evidence he practiced fraud or deceit on plaintiff in attempting to alleviate his natural concern and fear. Plaintiffs' evidence indicates Doctor Spencer was motivated only by Mr. Grosjean's best therapeutic interest.

We agree with the trial court's ruling that no jury question was presented regarding malpractice in obtaining plaintiff's consent to the proposed operation.

Our conclusion is supported by Natanson v. Kline, supra, 186 Kan. 393, 350 P.2d 1093; DiFilippo v. Preston, 53 Del. 539, 173 A.2d 333; Roberts v. Young, 369 Mich. 133, 119 N.W.2d 627, 99 A. L. R.2d 1330; Govin v. Hunter, Wyo., 374 P.2d 421.

█ It is also contended Doctor Spencer was negligent in the postoperative care given plaintiff the last few days before he was moved to Iowa City. Mrs. Grosjean testified she had suggested moving plaintiff to the Veterans Hospital or calling in another doctor but Doctor Spencer stated that was not necessary. Doctor

Spencer at that time advised Mrs. Grosjean plaintiff had developed a little infection. Doctor Spencer testified and the hospital charts disclose he treated plaintiff for this changed condition.

There is no expert testimony Doctor Spencer failed to do that which should have been done in diagnosing, advising or treating plaintiff at anytime nor that he did anything which should not have been done. A jury question on negligence was not created.

II. It is contended the trial court erred in sustaining defendants' objections to the question propounded to Mrs. Grosjean regarding statements of plaintiff to Doctor Spencer and also to a question propounded to Doctor Liechty.

Doctor Liechty was asked, "In other words, a tumor means a lot of different things to a lot of different people, doesn't it?" Defendants' objection on the grounds of the incompetency, irrelevancy and immateriality of the testimony was sutained. Plaintiffs made no offer of proof.

We have no idea what the excluded evidence of Mrs. Grosjean and Doctor Liechty might have shown. It might have supported plaintiffs' case and it might have harmed it. We cannot predicate error upon speculation as to the answers. Sewell v. Lainson, 244 Iowa 555, 559, 57 N.W.2d 556, 559.

It is the settled rule of this court that where the record fails to show what counsel expects to prove by a witness no prejudice is shown and none will be presumed. Pearson v. Butts, 224 Iowa 376, 387, 388, 276 N.W. 65, 71, and citations; McKinney v. Clark Brown Grain Co., 232 Iowa 1235, 1237, 7 N.W.2d 798, 799; In re Estate of Heller, 233 Iowa 1356, 1362, 11 N.W.2d 586, 590, and citations. See also 5 Am. Jur.2d, Appeal and Error, section 604; 4 C. J. S., Appeal and Error, section 294(c).

III. It is asserted the trial court erred in striking certain pleaded specifications of negligence. Specification (d) alleged Doctor Spencer failed to obtain consent from decedent to perform an operation. The proof is undisputed such consent was obtained. We need not consider the correctness of the ruling. No prejudice could possibly result under the record made by plaintiffs.

On defendants' motion the trial court struck specifi-

cation of negligence (e) which alleged Doctor Spencer withheld information of the true nature and extent of decedent's illness. We find no error as specification (c) which alleged substantially the same specification of negligence remained as part of plaintiffs' petition. Specification (j) was also repetitious and was properly stricken.

Specification (f) which alleged defendants refused the request to obtain advice and assistance of other physicians after the operation by Doctor Spencer was stricken. The same claim is included in specification (k). Specification (k) alleged negligence in postoperative care under which plaintiffs' evidence covered all phases of the postoperative care.

Mrs. Grosjean's suggestion that such advice and assistance be obtained is shown in the record. Our attention is not called to any authority a doctor has a duty to follow such suggestions. In the absence of expert testimony that such assistance should have been obtained before plaintiff was taken to Iowa City we find no basis on which negligence in the postoperative care could be predicated.

IV. Plaintiffs' motion for a new trial was based on the claimed errors which have been considered and on the assertion the trial court made mistakes of fact. None is shown by the record. We hold the trial court properly denied the motion for a new trial.

After due consideration of all contentions urged we find no error.—Affirmed.

All JUSTICES concur.