Mary L. WILES, Executor of The Estate of
Earl B. Wiles, Deceased, Appellee,

v.

William H. MYERLY, M. D., et al.,
Appellants.

No. 55567.

Supreme Court of Iowa.

Sept. 19, 1973.

Paul Moser, Jr., Des Moines, for appellant, William H. Myerly, M. D.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellants, Dennis D. Wilson, M.D., and Iowa Methodist Hospital, an Iowa corp.

Louis A. Lavorato, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Defendants appeal from judgment following an adverse jury verdict in a law action brought to recover for personal injuries to plaintiff's decedent sustained while anesthetized for the purpose of surgery.

January 7, 1969, Earl B. Wiles was operated on for a vascular circulatory problem while a patient at the Iowa Methodist Hospital, Des Moines. Mr. Wiles underwent two episodes of surgery that day. The surgeon both times was William H. Myerly; the anesthesiologist both times was Dennis D. Wilson; and the operations were performed in one of the regular operating rooms of the Iowa Methodist Hospital which supplied appliances, services and employees appropriate to the situation. Following the two sessions of surgery Mr. Wiles developed a condition on his buttocks which was alleged to have been a burn. Although there is a conflict in testimony as to the cause and condition of his buttocks, there was a condition that developed into eschar and finally healed. He died September 20, 1969, from unrelated causes.

Mary L. Wiles as executor of her husband's estate instituted the present action against the hospital, doctors Myerly and

Wilson. She relies upon the doctrine of res ipsa loquitur alleging that after decedent was anesthetized for the purpose of vascular surgery involving the front of his body and while unconscious and under the exclusive control of defendants and each of them and their agents and at a time when defendants and each of them and their agents had exclusive control over all the instrumentalities producing the injury, defendants and each of them and their agents negligently caused decedent to be burned on and about his buttocks.

In answer each defendant admitted some allegations of plaintiff's petition but denied generally those charging negligence, proximate cause and damages. Defendants also asserted in defense that the doctrine of res ipsa loquitur was not applicable under the facts pleaded.

Defendants' motions for directed verdict made at the close of plaintiff's evidence and renewed at the close of all evidence were overruled and the matter submitted to the jury which returned a verdict against all defendants in the sum of $25,000.

Defendant-Wilson's and defendant-hospital's motions for judgment notwithstanding the verdict or in the alternative, for new trial were overruled and this appeal followed.

Defendants' combined assignments of error raise three issues before this court: (1) whether plaintiff was entitled to the benefit of the doctrine of res ipsa loquitur; (2) whether the court erred in instructing the jury that Dr. Wilson could be liable for acts of negligence committed by others; and (3) whether the verdict is supported by the evidence.

I. During the first operation Dr. Myerly removed an atherosclerotic obstruction of the aorta, both common iliac arteries and the right femoral artery. As indicated, the anesthestic was administered by Dr. Wilson. Dr. J. R. Irwin, first year resident, and Dr. R. L. Kollmorgen, surgical resident at the hospital, and several nurses assisted Dr. Myerly in the operation, but they were not made parties to this action.

As part of the procedure in an operation of this type, an electrical instrument was used to cauterize blood vessels. In using this cautery machine, an electrode which is a flat, metal plate about twelve by eight inches in size had been placed directly beneath the buttocks of the patient as he lay on his back on the operating table. The only thing separating the buttocks from the plate would be the jelly on the plate which is used to make a better electrical contact. The cautery plate was connected to the machine and when activated Mr. Wiles' body became a segment of the electrical circuit.

Decedent's buttocks were not directly prepped for surgery in this instance. The prep solution was poured on the surgical field. The incision made by Doctor Myerly began at the chest cavity and went down the front to the groin and then across both sides. It was described as an upside down "T," going over a good portion of the body. Besides his buttocks, the other portions of Mr. Wiles' body that would have touched the operating table would have been his shoulders, a portion of his back, his thighs, the calves of his legs and his heels.

Following the operation which lasted some four hours, Dr. Myerly concluded a second operation was necessary because of an insufficient flow of blood to the patient's legs. It is not clear whether the cautery machine was used during the second operation which lasted about one hour and twenty minutes. Thereafter, Mr. Wiles was removed to the recovery room. At approximately 12:50 a. m. on January 8, 1969, tissue damage was discovered where Mr. Wiles had been in contact with the cautery plate. One nurse noted on the hospital records that at about 4:45 a. m. January 8, the affected area appeared to be "blistered." The records further indicate Dr. Irwin examined Mr. Wiles on the morning of January 8 and made these ob-

servations: "Burned areas both buttocks. Second degree left buttock, 5 by 5 centimeters, right buttock, 2 by 10 centimeters. Evidentally from cautery plate". After viewing the damaged tissue, Dr. Myerly made the following entry in Mr. Wiles' progress record: "Patient discovered during the night to have 2nd to 3rd degree burns of both buttocks. * * * Cause of this is very perplexing in view of the fact that use of cautery is routine and I personally saw plate placed beneath the patient with a very adequate * * * [amount of K-Y jelly]. * * * Will have machine checked for malfunction." Mr. Wiles' discharge report dated March 12 similarly noted there were "burns on each buttock."

Dr. Myerly testified he had "concluded that [the injured area of the patient's buttocks] was a burn and treated it as such," although he was then uncertain "whether the injury would turn out to be a deep burn or be more superficial and second degree burns." However, at the time of trial he surmised that the cause of the tissue damage was lack of circulation to the buttocks while lying on the hard, metal cautery plate, i. e., pressure necrosis. He further stated all the cautery machines functioned properly when examined by the hospital's electrician.

Dr. Irwin testified he and Dr. Myerly continued to believe Mr. Wiles was suffering from burns at the time of his discharge in March 1969. But at the time of trial, he concurred in Dr. Myerly's medical opinion that the tissue damage resulted from "pressure necrosis."

When Dr. Irwin examined Mr. Wiles January 5, he "noticed that there was nothing wrong with his buttocks at that time. The rectal area had 'good tone', there was no masses in the rectum. The prostate was smooth. The condition of his buttocks at that time was normal, no decomposition of tissue, and no burn."

The witness next saw Mr. Wiles January 6 following the taking of the aortogram.

He described his purpose in seeing Mr. Wiles at that time was to tell him what to expect as far as procedure for getting him ready for his vascular surgery would be. He also checked him to make sure the patient's vital signs were okay and there was no evidence of any bleeding or anything following his aortogram.

Doctor Irwin testified: "The first time that I can recall that this patient had something abnormal or wrong with his buttocks was when I saw him the next morning, January 8, at about 8:30 a. m. Upon examining this patient, I observed that there was tissue damage on both buttocks which was well circumscribed, meaning there was a definite demarcation between normal tissue and the affected tissue. * * * At that time it was my impression that the problem on the buttocks was a second degree burn."

Doctor Irwin said: "A lot of surgery in this hospital as was performed on Mr. Wiles, have been performed on persons of similar size and weight to Mr. Wiles with the same problems and same type of operation. These people were on the operating table as long as Mr. Wiles. There never occurred the same type of problem that occurred in Mr. Wiles' case."

Dr. Wilson testified he had no "real conclusive opinion as to what caused" the injury, but stated it was his opinion "the cautery machine itself was not a factor other than it was part of the surface on which the patient was lying." He further suggested the injury may have been the consequence of a chemical reaction between the prepping solution used to prepare the operative field prior to surgery and the cautery plate.

No other expert testimony was offered into evidence.

II. Our review is on errors assigned. Rule 334, Rules of Civil Procedure.

The first issue presented by this appeal —applicability of the doctrine of res ipsa loquitur—is raised by Doctor Myerly's first

and second assignments of error wherein he contends the trial court erred in failing to sustain his motions for directed verdict made at the close of plaintiff's evidence and renewed at the close of all evidence and the court erred in submitting the case to the jury on a res ipsa loquitur instruction. On the other hand, defendants hospital and Doctor Wilson by amendment to their brief and argument filed five months after plaintiff's brief and argument seek to raise the issue solely by their assignment the court erred in submitting plaintiff's case on a res ipsa loquitur instruction.

■ Plaintiff in brief and argument contends Doctor Myerly is raising objections to the instruction relating to res ipsa loquitur for the first time in this court; thus this assignment presents nothing for review in this court insofar as Doctor Myerly is concerned. We agree. See Miller v. Young, 168 N.W.2d 45, 51 (Iowa 1969).

When the proposed instructions were submitted by the court to counsel as directed in rule 196, R.C.P., counsel for Doctor Myerly stated, "Defendant Myerly has no objections to the instructions." Counsel for Doctor Wilson and defendant hospital urged at this point, "all the reasons heretofore urged in each separate motion * * * [motion for directed verdict] made at the close of plaintiff's evidence and at the close of all evidence."

First of all, the assignment urged by Doctor Wilson and defendant hospital presents nothing for review in this court. See Ritter v. Andrews Concr. Prod. & Sup. Co., 250 Iowa 297, 301–302, 93 N.W. 2d 787, 790.

Defendant Myerly contends his assignment directed to the court's instruction on res ipsa loquitur was set up in brief and argument in an effort to call attention to the fact that the trial court should have sustained the motions for directed verdict because of the insufficiency of plaintiff's case under the rule governing res ipsa lo-

quitur in actions for personal injury from medical treatment. Because of his failure to object to the instruction, Doctor Myerly's second assignment of error cannot be relied on for reversal. However, if plaintiff's case failed to generate a jury issue under the rules governing the doctrine of res ipsa loquitur in actions for personal injury due to medical treatment, Doctor Myerly was entitled to a directed verdict having moved therefor.

■ In this connection plaintiff had the burden to make out a case of negligence or unskillfulness by the preponderance or greater weight of the evidence. The doctrine of res ipsa loquitur does not relieve plaintiff of this burden since it does not in any degree affect or modify the principle that one who alleges negligence must prove the fact. Application of the doctrine relates only to the mode of proving defendant's negligence. The fact of the occurrence of the injury furnishes merely some evidence to go to the jury which permits defendant "to go forward with his proof" that the injury was occasioned by "vis major" or by other causes for which he was not responsible unless he wishes to take the risk of non-persuasion. The rule does not raise any presumption in plaintiff's favor. It permits but does not compel an inference that defendant was negligent. 9 Wigmore on Evidence, (Third Ed.), section 2509.

■ Res ipsa loquitur is a rule of evidence, not of pleading or substantive law. Thompson v. Burke Engin. Sales Co., 252 Iowa 146, 152, 106 N.W.2d 351, 355.

■ Before the doctrine can be invoked as a theory of recovery in a tort action for negligence plaintiff has the burden of proving existence of the essential facts necessary to bring the rule into operation. The two essential facts furnishing foundation for application of the doctrine are: (1) exclusive control and management of the instrumentality which caused the injury complained of by the person charged with

negligence, and (2) an occurrence causing the injury which was of such a type as in the ordinary course of events would not have happened if reasonable care had been used. The question whether the particular occurrence is such as would not happen if reasonable care had been used rests on common experience and not at all on evidence in the particular case that tends in itself to show such occurrence was in fact the result of negligence.

When both essential elements for application of the doctrine are established the happening of the injury itself permits but does not compel the drawing of an inference that defendant was in fact negligent. In the absence of either of these essentials the doctrine does not apply. Of course, the res ipsa loquitur inference fails if such injurious occurrence is shown to be of such a nature as can ordinarily happen despite due care.

Among the many Iowa decisions which recognize, discuss and apply the foregoing principles are: Eaves v. City of Ottumwa, 240 Iowa 956, 967–968, 38 N.W.2d 761, 769, 11 A.L.R.2d 1164, 1176; Shinofield v. Curtis, 245 Iowa 1352, 1360–1361, 66 N.W.2d 465, 470, 50 A.L.R.2d 964; Boyer v. Iowa High School Athletic Assn., 260 Iowa 1061, 1065–1066, 152 N.W.2d 293, 295–296; DeMoss v. Darwin T. Lynner Construction Co., 159 N.W.2d 463, 465–468 (Iowa 1968); Sweet v. Swangel, 166 N.W.2d 776, 778–779 (Iowa 1969); Pastour v. Kolb Hardware Inc., 173 N.W.2d 116, 125 (Iowa 1969); Wilson v. Paul, 176 N.W.2d 807, 809–811 (Iowa 1970); Fischer, Inc. v. Standard Brands, Inc., 204 N.W.2d 579, 583–584 (Iowa 1973). Many other Iowa cases dealing with the subject of res ipsa loquitur are collected in the cases cited. See also Slife, The Iowa Doctrine of Res Ipsa Loquitur, 35 Iowa L.Rev. 393 and Loth, Res Ipsa Loquitur in Iowa, 18 Drake L.Rev. 1.

In support of his contention the court erred in overruling his motion for directed verdict Doctor Myerly argues as one point

that with the availability of the discovery techniques the justification for using the doctrine of res ipsa loquitur disappears. In other words, he contends evidence as to the cause of decedent's injury was accessible to plaintiff by means of depositions and use of interrogatories and thus everything known by defendants was available to plaintiff. This contention is based on statements appearing in many Iowa cases that the underlying reason for the res ipsa rule is that the chief evidence of the true cause of the injury is practically accessible to defendant but inaccessible to the injured person.

In Boyer v. Iowa High School Athletic Assn., 260 Iowa at 1066, 152 N.W.2d at 292, this court discussed this "accessibility of evidence" principle and stated, "We have never held presence of this 'underlying reason' is an indispensable requirement for application of the doctrine." See also DeMoss v. Darwin T. Lynner Construction Co., 159 N.W.2d at 467. An argument similar to the one urged here by Dr. Myerly was rejected in Frost v. Des Moines Still College, 248 Iowa 294, 301, 79 N.W.2d 306, 311, where the question of the applicability of the doctrine of res ipsa was an issue. There the court concluded the right of discovery did not preclude plaintiff from declaring on the res ipsa doctrine as a theory of recovery.

Defendant Myerly does not explain in what manner plaintiff could employ discovery procedure before the filing of a petition.

Rules 159–166, R.C.P., provide for taking depositions for use in an action not yet pending to perpetuate testimony. However, it has been noted with reference to comparable Fed.R.Civ.P. 27: "This rule providing procedure for perpetuation of testimony of a witness is to be used in instances where as result of time witness' testimony might become unavailable, and rule does not provide a method of discovery to determine whether cause of action exists, and, if so, against whom action

should be instituted." See 8 Wright & Miller, Federal Practice and Procedure: Civil, section 2071, n. 9.

The authors in the cited section make this observation: "At first some concern was expressed that this rule might be used for the purpose of discovery before action is commenced and might enable a person to fish for some ground for bringing suit. The early commentators agreed that this was not the purpose of the rule, and, despite an occasional intimation to the contrary, the courts have generally agreed that to allow Rule 27 to be used for this purpose would be an 'abuse of the rule.'"

■ The availability of discovery techniques provided for in the Iowa Rules of Civil Procedure does not preclude application of the doctrine of res ipsa loquitur in the respect urged by defendant.

Doctor Myerly asserts as one brief point in support of his first contention "a doctor cannot be held liable for an injury to a patient if a physical idiosyncrasy of the patient causes an unusual reaction which is a cause of the injury." In another brief point he maintains "a surgeon cannot be held liable for an injury to a patient if the injury arises out of the preparation of the patient for surgery by hospital employees, or from use of defective hospital equipment."

Plaintiff challenges these contentions as raising an issue for the first time on appeal.

■ In support of this attack she relies on the rule consistently adhered to by this court that a party is not entitled to urge for the first time on appeal as an assignment of error an issue not raised and properly preserved for review in the trial court; such belated assignment presents nothing for review. See Mather v. State, 200 N.W.2d 498, 503 (Iowa 1972).

Although neither contention now asserted in the foregoing brief points was specifically made in the trial court by motion to direct or otherwise, Myerly, in effect, asserted in motion to direct that plaintiff had failed to prove by competent evidence a cause of action under the doctrine of res ipsa loquitur.

As we understand Myerly's argument he is (1) questioning the fact of control and (2) maintaining the res ipsa loquitur inference was overcome by evidence the injury was occasioned by other causes for which he was not responsible. More about this later.

Our immediate problem is whether there is substantial competent evidence of sufficient weight to generate a jury question as to the existence of the foundation facts giving rise to the res ipsa inference.

■ Common knowledge and experience teach us that in the ordinary course of events one undergoing surgery does not sustain an unusual injury to a healthy part of his body not within the area of the operation in the absence of negligence. In other words, one does not expect that in the ordinary course of events a patient would go into an operation for vascular surgery and come out with second and third degree burns on his buttocks.

It will be recalled Doctor Irwin testified an injurious occurrence similar to the type suffered by Mr. Wiles had never happened in any of the many similar operations performed in defendant hospital on persons with the same problems.

■ The evidence is of sufficient weight to warrant submission of the issue as to the existence of the second essential foundation fact.

Doctor Myerly maintains the first essential foundation fact—exclusive control and management of the instrumentality which caused the injury complained of—was not established. He argues that since they had no control over the physical frailties, allergies, reactions or idiosyncrasies of Mr. Wiles neither the doctors nor the hospital were in full control of the instrumentalities

involved. He relies on Mogensen v. Hicks, 253 Iowa 139, 110 N.W.2d 563 and Lagerpusch v. Lindley, 253 Iowa 1033, 115 N. W.2d 207.

The foregoing argument is based on the fact at the time of trial Doctor Myerly surmised the cause of the tissue damage was lack of circulation to the buttocks while the patient was lying on the hard metal cautery plate, i. e., pressure necrosis. Myerly described what he thought happened was that decedent had lain on the operation table long enough that the skin died because of lack of circulation. The aorta was clamped for a considerable period of time stopping the circulation to the lower half of the body; that plus the combination of lying on the steel plate, might have resulted in a pressure necrosis. The doctor said he was not positive about this theory of pressure necrosis since it had never happened before in his practice nor had he ever seen it reported in medical literature. This was a surmise on his part which he first thought of after the operation but never told the patient.

In Myerly's opinion the lack of circulation in the area injured was caused by the patient's atherosclerotic obstruction and the deliberate clamping of the aorta for a considerable period of time so the surgical procedure could be accomplished.

The doctor's testimony as to his theory of pressure necrosis merely suggests other possibilities as to the cause of plaintiff's injury.

■ The fact other possibilities as to the cause of injury are suggested by the evidence is not sufficient to take away from plaintiff the benefit of the doctrine of res ipsa loquitur. Beaudoin v. Watertown Memorial Hospital, 32 Wis.2d 132, 145 N.W.2d 166, 169.

After the injury appeared skin tests were run on Wiles to determine whether he was allergic to the chemical solution used in prepping for the operation. The results were negative.

Both Mogensen v. Hicks and Lagerpusch v. Lindley, supra, recognize the principle the physical frailties, allergies, reactions or idiosyncrasies of the patient which may enter into the case and affect the result are elements beyond the control of the surgeon or physician and thus res ipsa does not apply because of lack of exclusive control of the instrumentalities with which the doctor is working.

However, the cases are factually distinguishable. In *Mogensen* plaintiff's action was based on a claim for injury resulting from a topical anesthesia of pyribenzamine in the area under treatment. He was allergic to the anesthetic. In *Lagerpusch* the suit was brought on the theory defendant surgeon carelessly, unskillfully and negligently diagnosed the sickness of plaintiff's wife and negligently delayed in making proper examination of her; as a result of defendants' negligence she died. The doctor did not have control of her diseased condition.

The case before us is not based on the claim defendants' treatment or operation was unprofessional or below standard or that the surgeons were unskillful in their work, but on the theory defendants negligently failed to observe reasonable care while performing the operation, and by reason thereof an untoward act occurred producing a positive and independent injury.

Defendants' alleged negligence was in failing to take due care to avoid injury to the undiseased parts of Wiles' body in the vicinity of which the operation was performed.

The record does not present a factual situation for application of the principle announced in Mogensen v. Hicks, 253 Iowa 139, 110 N.W.2d 563 and Lagerpusch v. Lindley, 253 Iowa 1033, 115 N.W.2d 207.

There is substantial competent evidence to justify submission of the question as to the existence of the first foundation fact for application of the doctrine.

III. As stated, plaintiff had alleged her decedent was burned in the buttocks area and relied on this contention in seeking recovery. Myerly contends the only evidence in the record that a burn was inflicted comes from notes in the hospital record made by the surgeons who explained the meaning of the term in their depositions and testimony. He maintains plaintiff's conclusion that the injury was a burn lacks a factual foundation. We do not so view the record. The testimony of Doctor Myerly and his assistant, Doctor Irwin, is set out earlier in this opinion. Both originally concluded the condition in the injured area was a burn. It is true that at trial they had second thoughts.

■ These admissions are sufficient to generate a jury question as to the nature of the injured area. "The extrajudicial statements of a party to the action, civil or criminal, may be used against him as a quasi-admission coming in as substantive evidence provided they exhibit the quality of inconsistency with the facts now asserted in his pleadings and in the testimony relied on by him. 4 Wigmore on Evidence (Third Ed.) section 1048; McCormick on Evidence (Second Ed.) section 262." State v. Williams, 207 N.W.2d 98, 107–108 (Iowa 1973).

■ If, as defendant Myerly seems to suggest, plaintiff required expert testimony to establish that a burn was inflicted, the admissions of Doctors Myerly and Irwin that the decedent had received a burn in the area of his buttocks fulfilled this need. Defendant has no complaint in this respect.

IV. At another point in argument in support of his first assignment Myerly contends he has explained that the injury was occasioned by other causes for which he was not responsible and has thus rebutted or overcome the inference of negligence arising from the doctrine of res ipsa as a matter of law.

■ Usually res ipsa raises an inference of negligence whose weight is for the jury, regardless of the explanatory evidence opposing it. It has been said that "once plaintiff's evidence enables a jury to find negligence from the res ipsa inference, it takes an indisputably strong and complete defense to direct a contrary verdict as a matter of law for the testimony must sufficiently overcome a prima facie case." 18 Drake L.Rev. at 23.

This pronouncement in Young v. Marlas, 243 Iowa 367, 371–372, 51 N.W.2d 443, 445–446, is strong support for the foregoing statement:

"* * * Perhaps there are cases where, after a prima facie case of permissible inference of negligence has been made out by plaintiff's testimony, a verdict can be directed because of the strength of defendants' explanatory testimony. No prior decision of this court reached such a conclusion. Larrabee v. Des Moines T. & A. Co., 189 Iowa 319, 178 N.W. 373, and Ruebel Bros. v. American Exp. Co., 190 Iowa 600, 180 N.W. 658, indicate the issue would always be for the jury after the prima facie case was established by plaintiff's testimony. In Larkin v. Chicago G. W. Ry. Co., 118 Iowa 652, 657, 92 N.W. 891, 893, where it was admitted plaintiff made out a prima facie case by proof of an accident and defendant contended its evidence affirmatively established its right to a directed verdict, we held otherwise and observed: 'To say the least, it should require a peculiarly strong and conclusive array of proof to justify the court in withdrawing such an issue from the jury.' " See also Grant v. Younker Brothers, Inc., 244 Iowa 958, 969, 58 N.W.2d 834, 839–840 and Schneider v. Keokuk Gas Service Co., 250 Iowa 37, 41–42, 92 N.W.2d 439, 442.

■ Defendants' explanatory testimony in the case before us is not of such strength as would justify withdrawing from the jury the issue of defendants' negligence arising from the permissible inference brought into operation by the doctrine of res ipsa loquitur. Myerly was not enti-

tled to a directed verdict for the reason urged.

■ V. Myerly further contends in another brief point that expert testimony is generally a requisite in order to prove defendant's negligence in an action for personal injury due to medical treatment.

In Sinkey v. Surgical Associates, 186 N. W.2d 658, 660–662 (Iowa 1971), this court discussed the question of the necessity of expert testimony in such cases and cited a number of our decisions where this court has indicated exceptions to the general rule requiring proof by expert testimony. The court said:

"Evidence of the requisite skill and care exercised by a physician must be given by experts, unless the physician's lack of care is so obvious as to be within the comprehension of the layman's common knowledge or experience or the physician injures a part of the body not under treatment. * * * [citing authority]."

In Grosjean v. Spencer, 258 Iowa 685, 692, 140 N.W.2d 139, 144, the following principle is stated:

"We have recognized two exceptions to the rule requiring expert evidence in malpractice actions. Where a physician's lack of care is so obvious as to be within the comprehension of the layman and require only common knowledge and experience to understand, expert testimony is not necessary. Also where a physician injures a party of the body not under treatment expert evidence is not always required. * * * [citing authorities]."

The problem is also discussed in Daiker v. Martin, 250 Iowa 75, 80–84, 91 N.W.2d 747, 750–753, where several cases bearing on the question are considered.

The medical treatment in the present case was for correction of a vascular circulatory problem which required an incision beginning at the patient's chest cavity, going down the front to the groin and then across both sides. Infliction of a burn on the patient's buttocks is not a normal or usual result from such surgery if due care is exercised in the performance of the operation.

The facts here do not present a situation requiring expert testimony on the issue of defendants' negligence.

■ VI. That the doctrine of res ipsa loquitur is applicable to cases of this type appears to be well settled in Iowa. Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425; Frost v. Des Moines Still College, 248 Iowa 294, 79 N.W.2d 306.

In *Frost,* 248 Iowa at 302–303, 79 N.W. 2d at 312, a case factually similar to the present one, this statement appears:

"We think it is a just and logical conclusion that one who, while undergoing a surgical operation, sustains an unusual injury to a healthy part of his body not within the area of the operation, be not precluded from invoking the doctrine of res ipsa loquitur in an action against the doctors and nurses participating in the operation. The same thing must be said of the corporate hospital regarding its preceding or subsequent care of the patient. This is not altered by the fact that all the parties do not stand in such relation to one another that the acts of one may be regarded as the acts of the other, and that the injury may have been caused by the separate acts of any one of them, or by the fact that there were several instrumentalities and no showing as to which caused the injury or as to the particular defendant in control of it. Ybarra v. Spangard, supra [25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258]."

Under the facts of this case plaintiff was entitled to the benefits of the doctrine of res ipsa loquitur. The trial court was correct in overruling defendant's motion for directed verdict.

VII. In one of the two assignments of error asserted by defendant Wilson he insists the court erred in instructing the jury that he would be liable for acts of negli-

gence on the part of certain assistants, agents, employees, hospital nurses, attendants or interns.

In instruction 12 the jury was told that before they could render a verdict against the defendant Wilson, they must find he was negligent or that his assistants, agents or employees were negligent and such negligence was a proximate cause of decedent's injuries. In the last paragraph the jury was instructed that in determining whether any of the enumerated personnel who were with Doctor Wilson at and before and after the operation or who were assigned to him were in fact his agents, assistants, surgical nurses or employees of Doctor Wilson, they might consider the evidence as to who paid them, the right of Doctor Wilson to supervise, control or direct their activities at the time and all other facts and circumstances as shown by the evidence as bearing on the question as to whether they were Wilson's agent or agents at the time the negligent acts, if any, were committed.

Defendant Wilson made this timely objection to the instruction now under attack: "Instruction No. 12 with reference to the last paragraph in particular wherein the jury is given the opportunity to consider whether nurses, interns, or assistants are in fact employees of the defendant, Dennis D. Wilson. Reason, said instruction is not supported by the evidence there being no evidence here to the effect that Dennis D. Wilson is anything other than an independent contractor and there is no evidence to the effect that any of the interns, nurses or assistants were employed by Dennis D. Wilson."

■ In determining the merits of this assignment we consider only those objections made in accordance with the requirements of rule 196, R.C.P. Schall v. Lorenzen, 166 N.W.2d 795, 797–798 (Iowa 1969); Andrews v. Struble, 178 N.W.2d 391, 399–400 (Iowa 1970).

Wilson does not seem to contest the validity of instruction 12 as an abstract state-

ment of the law but rather challenges the propriety of giving the instruction under this record. He charges the court committed reversible error by submitting the instruction when there was no evidence tending to support it. Wilson maintains the record is totally void of any evidence he had an assistant, agent or employee involved in the case. He argues that no where in the record does it appear that any direction, supervision or control was exercised by him over any of the people involved in the operation.

In regard to Wilson's argument it was established he did not have any type of contract with the hospital or Doctor Myerly. It is also true that there is no evidence tending to establish he employed any interns, nurses or assistants. However, this does not reach the point.

Doctor Wilson testified he was not employed by the hospital; he defined his work as follows: "I administered to this patient a spinal anesthetic and then followed that with some intravenous and inhalation agents so that he was under combined spinal and general anesthesia. To administer the spinal anesthetic, we position the patient on their side with their knees flexed; wear sterile gloves; prep the patient with an antiseptic solution and then inject in the lumbar subarachnoid space a local anesthetic. * * * I apply this prep solution myself. I probably was relieved for twenty to thirty minutes during the noon hour sometime for lunch, as is customary at our hospital. [According to the record the first operation started at 9:18 a. m. and lasted until 1:20 p. m.]. When the patient is under the effect of an anesthetic, it is my duty to administer the anesthetic drugs, to monitor his condition by checking his blood pressure, pulse, skin color, state of oxygen, his ventilation and to replace fluids and blood as necessary, and to cope with whatever situations may arise during the course of the operation. * * * To the best of my knowledge I did not see Mr. Wiles after the operation, but it is customary for us to take the pa-

tient to the recovery room and he'd still be under my care and I would be looking in on him."

The foregoing testimony constitutes substantial competent evidence Doctor Wilson was charged with the care of decedent and the duty to protect him from the time he put the patient under an anesthetic until he came out of the anesthetic in the recovery room. This included the duty "to cope with whatever situations * * * [might] arise during the course of the operation."

■ If Doctor Wilson thus charged with the patient's care so neglected him as to allow the injury to occur he would be liable for the negligence, if any, of those who became his temporary assistants while performing the duty owed by him to Wiles regardless of whether he paid or employed them. Wilson was responsible for the activities of those performing his duty to the patient. See Ybarra v. Spangard, 25 Cal. 2d at 491, 154 P.2d at 690.

This principle of law is recognized by an earlier paragraph of instruction 12 where the jury was told a physician or surgeon was responsible for an injury done to the patient through the want of proper skill and care in his assistants, agents or employees, but not liable for negligence of hospital employees who were not the doctor's employees unless at the time the negligence was committed they were subject to the physician's supervision, direction and control.

The injury to Mr. Wiles occurred sometime from the time he was wheeled into the operating room until the nurse first discovered the burn in the early morning following the operation. He was operated on, wheeled into the recovery room and placed in bed from the cart. A jury could properly find that the injury occurred at any time the decedent was under an anesthetic or under the care of Doctor Wilson.

The paragraph of the instruction challenged permits the jury to consider the facts and circumstances shown by the evidence and those inferences properly to be drawn therefrom in determining whether Wilson had the *right* to supervise, control or direct activities of those who became his temporary assistants while performing the duty owed by Doctor Wilson to Wiles.

■ We do not agree with defendant Wilson that the record is void of any evidence he had an assistant. There is evidence by way of Doctor Wilson's testimony from which a jury could properly find it was necessary under the circumstances shown that someone had to help Wilson in the performance of his duty to the patient. They became his temporary assistants.

Wilson's other contention that there is no evidence he exercised any direction, supervision or control over any of the people involved in the operation is not tenable. The criterion under the instruction given is not whether Wilson did in fact exercise such control but whether under the circumstances he had the *right* to exercise it. Where liability is imposed on a doctor as here it cannot be logically maintained he has no right to supervise and control activities of those temporarily assisting him in the performance of his duty to the patient.

The assignment is without merit.

VIII. All defendants assert in assignments of error that the verdict of $25,000 is excessive and the trial court erred in not granting a new trial.

Mr. Wiles had incurred expenses for hospitalization and medical treatment in the amount of $3907 of which $1275 was attributable to the treatment for the condition of the buttocks. The jury thus awarded an additional $23,725 for the injury sustained.

Similar contentions of excessiveness of verdicts have been before this court on many occasions. In Frantz v. Knights of Columbus, 205 N.W.2d 705, 712 (Iowa 1973), this court said:

"Allowance of damages is primarily for the trier of fact. This court will not interfere therewith unless it clearly appears the verdict is flagrantly excessive or inadequate, or so out of reason as to shock the

conscience or sense of justice or raise a presumption it is the result of passion, prejudice or other ulterior motive or is lacking in evidential support. * * * [citing authorities]."

In considering defendants' contention the verdicts are so excessive as to shock the conscience and show passion and prejudice, we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear. We must also give weight to the fact the trial court, with benefit of seeing and hearing the witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85, 92; Miller v. Young, 168 N.W.2d 45, 52 (Iowa 1969) and authorities cited in these opinions.

Although the verdict was generous it was not excessive.

The case is therefore

Affirmed.