Mary CUNNINGHAM, Plaintiff
and Respondent,

v.

YANKTON CLINIC, P. A., Defendant
and Appellant.

No. 11866.

Supreme Court of South Dakota.

Feb. 14, 1978.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and respondent.

James E. Doyle of Doyle & Bierle, Yankton, for defendant and appellant.

ZASTROW, Justice.

In this medical malpractice case, plaintiff, Mary Cunningham, sought damages from the defendant, Yankton Clinic, P. A. (Clinic), for permanent disability resulting from negligent treatment of a fractured wrist by Dr. James Jackson, a physician-employee of the defendant Clinic. Plaintiff claimed that Dr. Jackson was negligent in removing a pin from her elbow area without first advising her of the consequences of such a procedure. Following a court trial, the plaintiff was allowed judgment against the defendant in the amount of $11,500. We affirm the lower court's decision.

Plaintiff accidentally fractured her left wrist on April 26, 1969. Dr. Jackson reduced the fracture and placed plaintiff's forearm and wrist in a cast which incorporated two pins—one which had been placed in the metacarpal area and the other in the proximal ulna region. Dr. Jackson advised the plaintiff that the pins were inserted to hold the fracture in traction and that the cast would be on about six weeks to allow the fracture to heal. On May 14, 1969, plaintiff returned to the defendant Clinic complaining of some purulent drainage from the elbow pin and severe pain. Dr. Halverson, another physician-employee of the defendant Clinic, prescribed an antibiotic to treat the infection.

There appeared to be no sign of infection in the elbow area when the plaintiff next saw Dr. Jackson on May 20, 1969. But by May 27, the pain and discomfort had returned and the plaintiff called and made arrangements to see Dr. Jackson the next day. On May 28, 1969, Dr. Jackson removed the pin from plaintiff's elbow area in a procedure which took approximately forty-five minutes.

Prior to removal, Dr. Jackson told the plaintiff that removal of the pin would result in some slippage of the fracture, that there were two surgical procedures which could be employed to correct the slippage after the cast was removed, and that leav-

ing the pin would result in continued pain. As a result of the removal of the pin, the plaintiff suffered a severe slippage of the fracture and was left with twenty to twenty-five percent permanent partial disability of the wrist and a serious cosmetic deformity.

The trial court found that Dr. Jackson did not inform the plaintiff that there would be a wrist deformity with permanent physical impairment or that any subsequent corrective surgical procedure would still leave her with permanent disability. The trial court also found that Dr. Jackson did not disclose to the plaintiff, prior to the removal of the pin, all of the information which a reasonable and prudent orthopedic specialist would have disclosed under the same or similar circumstances. It further found that the information which was disclosed to the plaintiff was insufficient to enable her to give an informed consent to the removal of the pin, and that had sufficient information been given, she would not have consented to its removal.

Defendant challenges the lower court's decision on the grounds that (1) the action is barred by the two-year statute of limitations found in SDCL 15–2–15(3); (2) the infection caused an emergency situation necessitating removal of the pin; (3) the consent given by plaintiff was, in fact, an informed consent and there was no expert or other evidence to the contrary; (4) it was prejudicial error for the trial court to prevent Dr. Mumford from testifying as to possible "complications that could arise with the pin if the infection were allowed to remain."

## Statute of Limitations

The defendant claims that the two-year statute of limitations found in SDCL 15–2–15(3) [1] barred the plaintiff's cause of action because the suit was brought more than two years after the cause of action accrued. The issue is whether the list of entities contained in the statute can be construed to include a professional medical corporation even though it is not specifically mentioned. If SDCL 15–2–15(3) does not include a professional medical corporation, then an action brought against such a corporation would be governed by the three-year statute of limitations for personal injuries found in SDCL 15–2–14(3).

The defendant argues that to exclude medical corporations from the protection of SDCL 15–2–15(3) would be to circumvent legislative intent to allow a two-year statute of limitations for medical malpractice actions.

■ Although a defense based upon a statute of limitations is meritorious and should not be looked upon with disfavor, *Chipperfield v. Woessner*, 1969, 84 S.D. 13, 166 N.W.2d 727, it is, however, a familiar principle that a statute of limitations should not be applied to cases not clearly within its provisions; it should not be extended by judicial construction. 53 C.J.S. Limitations of Actions § 3, pp. 912–913.

This court has in the past refused to enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning and do not lead to an absurd or unreasonable conclusion. *Ogle v. Circuit Ct.*, Tenth Jud. Circuit, 1975, S.D., 227

---

1. "Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within two years after the cause of action shall have accrued: * * * (3) An action against a *physician, surgeon, dentist, hospital, sanitarium, registered nurse or licensed practical nurse* for malpractice, error, mistake, or failure to cure, whether based on contract or tort; provided, a counterclaim may be pleaded as a defense to any action for services brought by a physician, surgeon, dentist, hospital, sanitarium, registered nurse or licensed practical nurse after the limitations herein prescribed, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred and was not barred at the time the claim sued or originated, but no judgment thereon except for costs can be rendered in favor of the party so pleading it * *." (emphasis supplied) This section was repealed by Ch. 145, § 4, S.L.1976, and reenacted as SDCL 15–2–14.1, providing a three-year statute of limitations. Chapter 168, S.L.1977 amended that statute to again provide for a two-year limitation for medical malpractice.

N.W.2d 621; *Crescent Electric Supply Co. v. Nerison*, 1975, S.D., 232 N.W.2d 76.

During oral argument, as support of its position, the defendant cited SDCL 47–11–17, which states:

"This chapter does not alter any law applicable to the relationship between a physician furnishing medical service and a person receiving such service, including liability arising out of such service."

The defendant contends that this statute indicates that the legislature intended to apply the two-year statute of limitations to medical corporations. We do not interpret the statute in such manner. It appears that the intent of SDCL 47–11–17 was to allow a patient to hold a physician individually liable even though he is practicing as a shareholder or employee of a medical corporation. In other words, the patient would not be restricted to a suit against the medical corporation but may also bring an action against the individual physician. See generally, 61 Am.Jur.2d, Physicians, Surgeons, etc., §§ 166, 171.

■ Because SDCL 15–2–15(3) was not amended to include medical corporations, for whatever reasons, when such corporations were allowed by the enactment of Ch. 29, § 2, S.L.1961 (SDCL 47–11–1), we will not extend the list by judicial construction to include them. This action was brought well within the applicable three-year limitation for personal injuries of SDCL 15–2–14(3).

### Emergency Situation

Defendant argues that the pin-track infection present in plaintiff's elbow on May 28, 1969, created an emergency situation which obviated the necessity of full disclosure.

■ There is a recognized exception to the rule that a physician must obtain his patient's consent both to an operation or treatment where an emergency situation exists and immediate action is necessary to preserve the patient's life or health and it is impracticable to first obtain the patient's consent which the surgeon deems to be im-mediately necessary. *Trogun v. Fruchtman*, 1973, 58 Wis.2d 596, 207 N.W.2d 297; *Grosjean v. Spencer*, 1966, 258 Iowa 685, 140 N.W.2d 139; *Bang v. Charles T. Miller Hospital*, 1958, 251 Minn. 427, 88 N.W.2d 186. However, the danger to the life or health of the patient must be an immediate danger, not a future one. 61 Am.Jur.2d, Physicians, Surgeons, etc., § 159, p. 288.

■ Although we recognize this exception, we find it inapplicable to the facts in this case. Plaintiff was undoubtedly in great pain; but it appears from Dr. Jackson's own testimony that the danger to the patient's health was not immediate, nor was it impracticable to first obtain her consent as she was not unconscious or similarly incapacitated when the decision to remove the pin was made.

### Informed Consent

#### (a) Expert Testimony

■ A doctor has the duty to make a reasonable disclosure to his patient of the significant risks in view of the gravity of the patient's condition, the probabilities of success, and any alternative treatment or procedures, if such are reasonably appropriate, so that the patient has the information reasonably necessary to form the basis of an intelligent and informed consent to the proposed treatment or procedure. *Scaria v. St. Paul Fire & Marine Ins. Co.*, 1975, 68 Wis.2d 1, 227 N.W.2d 647; *Peeples v. Sargent*, 1977, 77 Wis.2d 612, 253 N.W.2d 459; *Grosjean v. Spencer*, supra; *Block v. McVay*, 1964, 80 S.D. 469, 126 N.W.2d 808.

The defendant argues, however, that the judgment for the plaintiff should be reversed because she failed to produce any expert testimony to establish the existence or the extent of a physician's duty to disclose risks of a proposed treatment, citing Annot., 52 A.L.R.3d 1084. The plaintiff responds that expert testimony is not necessary in a medical malpractice case involving a question of informed consent and relies upon the authority of *Canterbury v. Spence*, 1972, 150 U.S.App.D.C. 263, 464 F.2d 772.

■ However, we need not decide whether an informed consent case may be proven without expert testimony since Dr. Jackson admitted on adverse examination that the standards of the medical practice in his community would require him to advise her of the ramifications of the removal of the pin.[2]

### (b) Sufficiency of the Evidence

The defendant argues that the record as a whole shows that Dr. Jackson properly disclosed to the plaintiff all material elements of the procedure and that the plaintiff gave an informed consent to the removal of the pin.

■ On review, the successful party is entitled to the benefit of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action. *Potter v. Anderson,* 1970, 85 S.D. 142, 178 N.W.2d 743. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." SDCL 15–6–52(a). If a finding of fact is "clearly erroneous," then, and only then, can it be set aside.

■■ In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. *In re Estate of Hobelsberger,* 1970, 85 S.D. 282, 181 N.W.2d 455. This court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. *Potter v. Anderson,* supra.

■ Viewed in this fashion, the evidence in this case established that shortly after the fracture was set, Dr. Jackson told plaintiff that the pins were inserted to hold the fracture in position and that it would probably be six weeks before the fracture would be healed. When he removed the pin, he told plaintiff that removal of the pin would cause some slippage. He also told her that there were two surgical procedures which could be employed after the cast was removed. He did not tell her anything about the consequences of leaving the pin in except that there would be continued pain. He did not tell her that the surgical procedures would still leave her with a permanently deformed wrist.

The trial court, in its findings of fact, found that plaintiff's consent to the removal of the pin was uninformed even though there was some dispute as to what was divulged by Dr. Jackson. The court found that the information given to plaintiff by Dr. Jackson concerning the risks inherent in the alternative routes she faced was only sketchy. The reasonable inference which can be drawn from the evidence in support of the court's findings is that the infection from the elbow pin was sufficiently treatable by antibiotics to require Dr. Jackson to fully advise her of the possibility of such alternative treatment. The inference that had plaintiff known of the probable results of the removal she would have elected to treatment with antibiotics and endured the pain is also reasonable.

The trial court did not agree with defendant that Dr. Jackson had properly advised plaintiff of the material elements involved upon the removal of the pin necessary to give an informed consent. It was for the trial judge to select from the conflicting evidence that which he would believe. Obviously, he chose the plaintiff's version. From it he found that plaintiff's consent to removal of the pin from the elbow area was not an informed consent because Dr. Jackson had not disclosed all of the information which any reasonable and prudent orthopedic specialist would have disclosed. We are not firmly and definitely convinced that a mistake has been committed; therefore, we will not upset the findings of the trial court on this issue.

---

2. The "ramifications" of removal had been established by prior cross-examination as being the slippage of the fracture with resulting cosmetic and physical impairment.

### Dr. Mumford's Testimony

Defendant contends that the trial court committed prejudicial error when it prevented Dr. Mumford from testifying as to whether complications could have arisen if the pin had been allowed to remain. The court sustained plaintiff's objection to the question on the grounds that it called for a conclusion from the witness without a foundation. Dr. Gross was later allowed to answer the same question, favorably to Dr. Jackson; we assume the testimony defendant sought from Dr. Mumford would have been the same and also favorable to Dr. Jackson. If the court committed error in its ruling as to Dr. Mumford's testimony, there does not appear to have been prejudicial error because the answer sought is part of the record through Dr. Gross' testimony.

The judgment is affirmed.

DUNN, C. J., and WOLLMAN and PORTER, JJ., concur.

WINANS, Retired Justice, dissents.

WINANS, Retired Justice, sitting for MORGAN, J., disqualified.

WINANS, Retired Justice (dissenting).

I am dissenting from the opinion of the court on the basis that, I believe and would so argue, the two-year statute of limitations under (3) of SDCL 15–2–15 does apply. The defendant, formed pursuant to SDCL 47–11–1, is made up of doctors, and any liability that it has is vicariously predicated upon the proof of liability by wrongdoing on the part of the doctor who performs the procedure, and no one argues that the two-year statute does not apply to him. I do not believe that Ogle or Crescent, cited in the majority opinion, lead to any contrary conclusion. As a matter of fact, I believe that the opinion of the court leads "to an absurd or unreasonable conclusion," simply because the doctor is out but his clinic is in. I would predicate my dissent on this one issue.

I am somewhat bothered by the court in not allowing Dr. Mumford's testimony. I would not reverse the opinion on this alone, but I do believe that the trial court comes perilously close to committing prejudicial error, even though I subscribe to the theory of law that gives the court large discretion in the amount of expert testimony that it is going to allow. I am inclined to the belief that in this case the court was more restrictive than it should have been, even though I go along with the opinion as written, except for the statute of limitations.