# IN THE SUPREME COURT OF IOWA

No. 20–0195

Submitted October 21, 2021—Filed April 29, 2022

**DANIELLE PUTMAN,**

Appellant,

vs.

**SHAWN J. WALTHER** and **AMY M. WALTHER,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Kellyann Lekar, Judge.

The plaintiff in a misrepresentation case involving the seller disclosure in a home sale appeals the district court's grant of summary judgment in favor of the defendants. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Patrick C. Galles of Correll, Sheerer, Benson, Engels, Galles & Demro P.L.C., Cedar Falls, for appellant.

Matthew M. Craft of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, for appellees.

**APPEL, Justice.**

A few months after a buyer purchased a home, the buyer discovered water in the basement. The buyer contacted a contractor who inspected the basement, found evidence of past water events, and submitted a bid for the needed repairs. In the next couple of months, four additional events of water infiltration in the basement occurred and continued thereafter.

The buyer sued the sellers, her real estate agent, the seller's real estate agent, and a home inspector, claiming that they had misrepresented the condition of the house prior to her purchase. The defendants moved for summary judgment based on the failure of the buyer to designate an expert on causation and damages. The district court granted summary judgment and the buyer appealed. We transferred the case to the court of appeals, which affirmed the district court.

Based on our review of the record and applicable rules, we conclude that the buyer offered sufficient evidence to survive the defendants' motion for summary judgment. We therefore vacate the decision of the court of appeals, reverse the district court judgment, and remand the case for further proceedings.

**I. Background Facts and Proceedings.**

**A. Overview of Facts.** Danielle Putman was interested in purchasing a home in Waterloo from Shawn and Amy Walther. As required by Iowa law, Putman received from the Walthers a document entitled "Seller Disclosure of Property Condition" on February 8, 2018. The disclosure described the basement conditions as "2010 sewer back up [&] SW wall seepage a few times." Putman

and the Walthers entered into a purchase agreement for the home on March 5, and the purchase closed as per the agreement on April 27.

In late June or early July 2018, Putman asserts that water seeped into the basement of the property after two inches of rain. She states that Magee Construction inspected the water damage shortly after the infiltration event and provided her a letter signed by David Holien from Magee Construction dated July 19, five sets of photographs, and a bid for necessary basement repairs (Magee Construction documents).

The Holien letter in the Magee Construction documents declared that water damage was observed in the lower level family room and bedroom. The letter declared that the walls of the rooms were tested with a moisture meter, revealing water in the drywall a foot up from the floor. The letter further noted that in the bedroom in the southwest corner, the floor was raised 2.5 inches off the concrete, "which indicates a previous water infiltration from the exterior." The letter observed that an exterior wall in the vicinity of a basement window had been built to channel water flow on the south side of the structure. The letter declared that an old drain line was capped off and a cleanout was under the carpet and pad of the family room. The letter concluded by stating, "I do not know what the south wall looks like behind the drywall, but it is obvious the infiltration of the water/rain on June 29th which was over 2″ according to the US Weather Service came through this wall."

In addition to the Holien letter, Magee Construction attached a series of photographs of the basement and a detailed bid to repair the damage totaling $11,571.48.

After July 19, according to Putman, other instances of water infiltration in the basement occurred. Specifically, Putman claimed basement water infiltration occurred on August 6, September 4, September 19, and October 1. Further, according to Putman, the water infiltration in the basement continued after these occurrences.

**B. Putman's Petition.** Putman filed her petition in this case on October 25, 2018. She alleged water damage in the basement occurred in late June or early July and that additional water issues occurred on a frequent basis and damaged the home. Putman further asserted that she has been advised that the Walthers had a sump pit in the backyard with a pump for the purpose of pumping water away from the house. She additionally claimed that the defendants called the Waterloo water department at least twenty times for water issues regarding the house, including sanitary sewer issues that were not disclosed to her.

Attaching a copy of the Seller Disclosure of Property Condition, Putman alleged that the sellers understated the problem of water seepage. With respect to the basement conditions, the disclosure statement only disclosed "2010 sewer back up [&] SW wall seepage a few times." Putman alleged that the Walthers knew or should have known that the failure to disclose information about the persistent water infiltration in the basement would cause damage to her. She

alleged that the Walthers' intentional and negligent misrepresentation of the property was a proximate cause of mental, emotional, and "financial" damages.

Putman also alleged that: "[O]n July 16, 2018, Plaintiff contacted Magee Construction Company to inspect the water damage to the residence. Plaintiff received the attached report marked as 'Exhibit C.' "

Putman attached a copy of the Magee Construction documents to the original petition. Putman's amended petition contained the same allegation but Putman apparently failed to attach the Magee Construction documents to her second petition.

**C. Course of Discovery.** On March 15, 2019, the parties filed a trial scheduling and discovery plan with the district court. The order setting trial and incorporating the discovery plan required the disclosure of expert witnesses by Putman by June 11, 210 days before trial. The defendants served discovery on Putman, including interrogatories requesting Putman to identify expert witnesses. Notably, Putman disclosed "a representative of Magee Construction" as an expert witness in her discovery responses.

**D. Motion for Summary Judgment.** The Walthers joined the other defendants in filing for summary judgment. As undisputed facts, the defendants collectively observed that Putman in her deposition stated that she did not know the cause of the water infiltration. The defendants also claimed that Putman had failed to designate an expert to testify in the case and had not identified any witnesses that could testify as to the cause of water infiltration in her home.

Putman resisted the summary judgment motion. In her resistance, she asserted that she disclosed in discovery "Magee Construction who viewed the site and provided an estimate for the cost to repair and otherwise provided observations as to the source of water infiltration." Putman's resistance asserted that "the Plaintiff herself can testify as to the source of water and her observations having lived in the home for more than a year" and that she had "video evidence and photos of the water to provide to the Defendants." The Putman resistance further cited statements of a neighbor regarding the water infiltration in the basement of her residence and noted a call log of the City of Waterloo which "clearly indicates calls were made for storm water pumping."

The only evidence offered in support of Putman's resistance to the motion for summary judgment was a short affidavit by Putman herself. In the Putman affidavit, she asserted that she had read and verified every statement contained in her resistance. In addition, Putman claimed that water came into the basement from sanitary sewer overflow, seepage through the floor and walls, and other unknown sources. She asserted that after the real estate transaction closed, she "was advised" that the Walthers had a sump pit in the backyard in an effort to redirect water around the house, "presumably to keep water out of the basement." She further summarized the contents of the letter in the Magee Construction documents, noting the elevation of the floor in the finished basement bedroom beneath the carpeting, the presence of a drain hidden in the floor beneath the carpet, and watermarks on the wall behind the flooring and sheetrock. She asserted that the City of Waterloo continues to be active in water

management in the area. Lastly, she claimed that "it is well known" that the neighborhood has severe issues with sewage backup which were not disclosed to her prior to her purchase.

**E. Pretrial Conference.** About a week before trial, the district court on January 3 held a pretrial conference. The district court noted that the motions for summary judgment were still pending but decided to proceed with the pretrial conference. With respect to pretrial evidentiary matters, the defendants challenged the late listing of a repair estimate prepared by Midwest Basement, and the late listing as a witness of Steve Burrell, a real estate agent who was prepared to testify regarding the resale value of the house in its present condition. Finally, the defendants challenged the admissibility of the call log of the City of Waterloo, asserting that Putman's resistance to the motion for summary judgment did not establish an adequate foundation for the admissibility of the document.

In addition, the parties at the pretrial conference discussed the Magee Construction documents. Notably, the defendants conceded that the Magee Construction documents were produced in discovery and, as a result, the defendants were aware of their contents. But according to the defendants, the Magee Construction documents don't

> necessarily appear as a report, but as an estimate in which it explains the work that could be done in the home, even though it has not been done. We'll have other objections at the time of trial, but I think the expert report is limited to anything that has not been produced to us.

While the defendants asked that the testimony arising from the Magee Construction documents be limited by the extent of disclosure, the defendants sought to exclude entirely any testimony from Midwest Basement or Steve Burrell on the ground that the sum and substance of their testimony was not timely disclosed. The defendants repeated their objection to "any claim for damages that were not disclosed or claimed in discovery and any documentation which was not disclosed or produced in the course of discovery." So, the defendants at the pretrial conference did not object to the admissibility of the Magee Construction documents, but only that the testimony be limited to the scope of the subject matter of the documents.

The Walthers joined "each and every one" of the arguments provided by the defendants. In addition, the Walthers' counsel argued that evidence related to the installation and removal of a sump pit in the backyard of the home should be excluded under Iowa Rule of Evidence 403. Putman replied that the removal of the sump pit is "not disputed as a fact." The defendants responded that the record lacked any testimony linking the sump pit to any damages claimed in the case.

**F. Order on Summary Judgment Motion.** On the same day that the district court conducted the pretrial conference, the district court entered an order on the defendants' motion for summary judgment. The district court granted the defendants' motion and dismissed the case.

In its order, the district court analyzed the defendants' claim that summary judgment should be granted due to Putman's failure to designate an

expert on causation and damages. The district court noted that Putman's evidence was generally sufficient to survive summary judgment. However, the district court concluded that expert testimony was required on the issues of the cause of the water damage and cost of repair. While the district court recognized that Putman might have been able to testify regarding damages to personal property without an expert, the district court concluded that "this element of damages cannot be reached without first proving the issue of causation, which cannot be done without expert testimony." As a result, the district court granted the defendants' motion for summary judgment and dismissed the case.

**G. Issues on Appeal.** Putman filed a timely notice of appeal. Putman first asserts that the district court improperly excluded the Magee Construction documents on the issues of causation and damages in its summary judgment analysis. Putman claimed that disclosure of Magee Construction as an expert was not required under Iowa Rule of Civil Procedure 1.500(2)(*b*) or Iowa Rule of Civil Procedure 1.508. In any event, Putman argued that any failure to comply with our expert rule should be considered harmless under Iowa Rule of Civil Procedure 1.517(3)(*a*).

Second, assuming that the Magee Construction documents could properly be considered by the court, Putman asserts that she presented sufficient evidence of her claim under Iowa Code chapter 558A (2018) to survive summary judgment.[1]

---

[1]No claim on appeal is made that the district court should have considered the untimely disclosed evidence related to Midwest Basement or Steve Burrell.

We transferred the case to the court of appeals. The court of appeals affirmed. It held that expert testimony on causation and damages was required in the case. The court of appeals found that Putman failed to preserve in the district court any argument that designation of the expert was not required or that any shortcomings in failure to designate were harmless error.

**II. Standard of Review.**

A district court's summary judgment ruling is reviewable for correction of errors at law." *Terry v. Dorothy*, 950 N.W.2d 246, 249 (Iowa 2020). Summary judgment is appropriate if expert testimony is required to establish general negligence or foundational facts and such testimony is unavailable. *Welte v. Bello*, 482 N.W.2d 437, 440 (Iowa 1992) (en banc).

**III. Discussion.**

We first address the question of whether expert testimony was required for Putman to survive the defendants' motion for summary judgment on either causation or damages. Although not specifically mentioned in her petition, Putman's factual allegations tracked Iowa's Real Estate Disclosures Act, Iowa Code chapter 558A.[2] Under this statutory provision, a seller of real estate is required to provide a written disclosure statement to a potential buyer. Iowa Code § 558A.2. The disclosure must include "information relating to the condition and important characteristics of the property and structures located

---

[2]Under our notice pleading approach, a pleading is sufficient if it informs the defendant of the incident giving rise to the claim and of the claim's general nature. *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981). There is no requirement that the plaintiff allege theories of recovery. *Tigges v. City of Ames*, 356 N.W.2d 503, 507 (Iowa 1984) (en banc).

on the property." *Id.* § 558A.4(1)(*a*). The seller has a duty to comply with disclosure requirements in good faith. *Id.* § 558A.3(1). A person who violates the chapter is liable for the amount of actual damages suffered by the transferee. *Id.* § 558A.6(1).

The gist of the claim is misrepresentation. The first question is whether the Walthers adequately disclosed the persistent nature of the water infiltration problem in the basement which was known or should have been known to them. *Jensen v. Sattler*, 696 N.W.2d 582, 588 (Iowa 2005).

The limited disclosures made by the Walthers in the disclosure statement were arguably misrepresentations in light of the repetitive postsale water invasion events and the discovery of aggressive past intervention efforts. Whether the Walthers misrepresented the basement conditions is within a layperson's ability to decide without an expert. *See Easton v. Strassburger*, 199 Cal. Rptr. 383, 393 (Ct. App. 1984) (holding issues in a claim involving real estate are resolvable by common knowledge and did not turn on facts within the specific knowledge of professional experts); *Durbin v. Ross*, 916 P.2d 758, 765 (Mont. 1996) (noting an expert is not required to support a claim under a real estate disclosure statute); *cf. Cockerton v. Mercy Hosp. Med. Ctr.*, 490 N.W.2d 856, 859 (Iowa Ct. App. 1992) (holding an expert was not needed to establish the standard of care when a patient fell in an x-ray room, distinguishing between cases "requiring expert testimony to establish a deviation from an accepted standard of care of hospitals" and cases "where the hospital was required to exercise ordinary care in providing a routine service in light of the patient's known

condition"). No liability expert was required to support the misrepresentation claim in this case.

That leaves the question of whether the Walthers were entitled to summary judgment on the question of damages proximately caused by the misrepresentation because of the failure to designate an expert. There are several ways to calculate damages for misrepresentation, including the pecuniary loss suffered as a result of the recipient's reliance upon the misrepresentation, the difference in the value between what was received and what was paid, and the lost benefit of the bargain. *See* Restatement (Second) of Torts § 549 (Am. L. Inst. 1977). Iowa "recognize[s] two measures of damages for fraud cases: (1) benefit of the bargain plus consequential damages and (2) out of pocket expenses." *Midwest Home Distrib., Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735, 739 (Iowa 1998). Simply stated, "a defrauded plaintiff is entitled to recover those losses proximately caused by reliance on the misrepresentation." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 739 n.5 (Iowa 2009).

Putman attempted to prove damages under the lost benefit of the bargain theory by offering the opinion of a real estate agent as to the diminished value of her home in its actual condition. However, the district court properly ruled that opinion inadmissible based on untimely disclosure. There is authority, however, for the proposition that Putman could have offered her own testimony on the decreased value of the property. *John Thurmond & Assocs., Inc. v. Kennedy*, 668 S.E.2d 666, 669 (Ga. 2008); *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380–81 (Iowa 1983); *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 213 (Iowa 1980) (en

banc). Putman did not offer her lay opinion in her resistance to the motion for summary judgment and has not presented the question on appeal.

But through the Magee Construction documents and her own affidavit, Putman put on proof that there had been and continued to be serious water problems going well beyond the "wall seepage a few times" reference in the seller disclosure. From reviewing the Magee Construction letter, one can reasonably infer that the June 2018 water infiltration was a continuation of prior issues and that the infiltration would not have occurred, nor would the need to repair it have arisen, had the home been as represented.

Lastly, on the cost of repair, it is not entirely clear to us that testimony about the scope and cost of repairs amounts to expert testimony. A witness is allowed to give a lay opinion if the testimony is based on the witness's own perception, helpful to determining a fact in issue, and "[n]ot based on scientific, technical, or other specialized knowledge within the scope of rule 5.702." *See* Iowa R. Evid. 5.701. Holien's report based on his observation of the work he was asked to perform and the cost of materials and time he would charge to make repairs would certainly be based on his own perception. *See, e.g., Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 390–91 (Iowa 2012) (allowing a pharmacist to testify as a lay witness about delivery log procedures when the procedures were within the pharmacist's personal knowledge). The question here is whether the damages testimony would be "based on scientific, technical, or other specialized knowledge within the scope of rule 5.702. Iowa R. Evid. 5.701(*c*).

We recently described the distinction between expert and lay opinion testimony by "[l]imiting a lay witness's testimony to inferences drawn from facts using 'reasoning familiar in everyday life' " rather than testimony "based on 'scientific, technical, or specialized knowledge' that is outside the understanding of an average juror's reasoning" in the context of interpreting information from cell tower records about the location of cell phones. *See State v. Boothby*, 951 N.W.2d 859, 876–77 (Iowa 2020). The purpose for this distinction is to limit lay opinion testimony to situations where the jurors can sufficiently understand the underlying facts to be able to evaluate the reliability of the layperson's opinion. *See id.* ("Limiting a lay witness's testimony to inferences drawn from facts using 'reasoning familiar in everyday life' eliminates reliability concerns because a juror is able to use her own reasoning to evaluate the witness's opinion.").

For example, in *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635 (Tex. App. 2012), the court held that the homeowner could testify about the cost of repairs of a swimming pool in a breach of contract action through lay testimony and through bids where the issues were not technical and complex. *Id.* at 640–42. On the other hand, there is authority for the proposition that a lay witness cannot testify about the cost of repairs where they are extensive and technical in nature. *Pjetrovic v. Home Depot*, 411 S.W.3d 639, 649 (Tex. App. 2013).

We need not resolve that issue today. Even if testimony about the scope and cost of repairs in this case does require expert testimony, we conclude that Putman adequately disclosed the contours of the proposed testimony of Magee

Construction.[3] Putman identified Magee Construction as an expert in discovery and produced the Magee Construction documents. Because Magee Construction was not hired for purposes of litigation, an expert report was not required under Iowa Rule of Civil Procedure 1.500(2)(*b*). Instead, Putman is required to comply with Iowa Rule of Civil Procedure 1.500(2)(*a*), which requires disclosure of the witness and a summary of factual knowledge. *See McGrew v. Otoadese*, 969 N.W.2d 311, 323 (Iowa 2022); *see also Ziegler v. Easton Suburban Water Auth.*, 43 A.3d 553, 556–59 (Pa. Commw. Ct. 2012) (expert report not required from a contractor hired to make repairs on damage to house). While Putman's answer to the expert interrogatory only identified Magee Construction and did not provide a summary of the facts about which Magee Construction would testify, the Magee Construction documents attached to the original petition and produced in discovery provided an adequate summary of the expected testimony. To the extent that Putman did not fully comply with technical requirements under rule 1.500(2)(*a*), such lack of compliance was harmless in light of the information produced in discovery. Iowa R. Civ. P. 1.517(3)(*a*).

---

[3]We conclude the issue of whether the Magee Construction documents should be considered in defeating the defendants' motion for summary judgment was presented to and at least impliedly decided by the district court. In response to the defendants' assertion that the plaintiff did not designate an expert witness, plaintiff in the summary judgment proceedings noted that Magee Construction "viewed the site and provided an estimate for the cost of repair and otherwise provided observations as to the source of water pollution." Further, the district court order discussed the Magee Construction documents but necessarily rejected the notion that the evidence was sufficient to defeat defendants' motion for summary judgment based upon the lack of expert testimony. Although terse and sparse, we consider the issue preserved in the district court's ruling. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

For the above reasons, we conclude the district court erred in concluding that the defendants were entitled to summary judgment because Putman failed to provide expert testimony on the questions of causation and damages.

**IV. Conclusion.**

The decision of the court of appeals is vacated. The order of the district court granting the defendants' motion for summary judgment in this case is reversed. The case is remanded to the district court for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**