# IN THE COURT OF APPEALS OF IOWA

———————

No. 24-1824
Filed February 25, 2026

———————

**Rosemary Loper,**
Plaintiff–Appellant,

v.

**Southeast Iowa Regional Medical Center,**
Defendant–Appellee.

———————

Appeal from the Iowa District Court for Des Moines County,
The Honorable Joshua Schier, Judge.

———————

**AFFIRMED**

———————

William Tyler Logan, Keokuk, attorney for appellant.

Desirée A. Kilburg, Paul J. Esker, and Jacob H. Schiller of Bradley & Riley
PC, Iowa City, attorneys for appellee.

———————

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J., Dissent by Sandy, J.

1

**CHICCHELLY, Judge.**

Rosemary Loper appeals the district court order granting summary judgment for Southeast Iowa Regional Medical Center, Inc. (SEIRMC) on her claim of negligence. She contends the district court erred by granting summary judgment against her for not serving a certificate of merit affidavit under Iowa Code section 147.140 (2023). Finding no error, we affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

Loper's negligence claim stems from a fall she suffered after receiving medical treatment in October 2021. Loper, then eighty-two years old, was admitted to SEIRMC for nausea, vomiting, and abdominal pain. She was discharged about four hours later after being diagnosed with a urinary tract infection. Loper dressed and waited for someone to come with a wheelchair to bring her out of the building. When nobody came, she left the exam room and fell while walking to the exit. Loper suffered an L3 compression fracture.

In August 2023, Loper filed this expedited civil action against SEIRMC, alleging that it breached its duty by not providing the necessary aid to prevent Loper from falling after treating her. In July 2024, SEIRMC moved for summary judgment because Loper never obtained a certificate of merit showing a prima facie case. Loper resisted, arguing that her claim involved "nonmedical, administrative, ministerial, or routine care" so expert testimony was not needed. The district court rejected Loper's argument and found that "the decision as to whether or not a patient needs to be discharged under supervision or with a wheelchair requires a personal assessment by their treating provider." Because expert testimony is necessary to help a jury decide whether SEIRMC breached the standard of care by not providing Loper with a wheelchair, the court held that a certificate of merit affidavit was required by Iowa Code section 147.140.

## II. SCOPE AND STANDARD OF REVIEW.

We review the district court's summary judgment ruling and questions of statutory interpretation for correction of errors at law. *Banwart v. Neurosurgery of N. Iowa, P.C.*, 18 N.W.3d 267, 272 (Iowa 2025).

> Summary judgment is proper only if the record reflects no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Because this appeal turns on the district court's application of section 147.140, summary judgment is the proper vehicle to test the validity of the claim and we need only decide whether the district court properly applied the law.

*Kirlin v. Monaster*, 984 N.W.2d 412, 415 (Iowa 2023) (cleaned up). A party to an expedited civil action may move for summary judgment on limited grounds. *See* Iowa R. Civ. P. 1.281(3)(b)(1). Not making expert disclosures when required may be grounds for summary judgment. Iowa R. Civ. P. 1.281(3)(b)(1)(4) cmt.

## III. DISCUSSION.

The main question on appeal is whether Loper had to serve a certificate of merit affidavit on SEIRMC. Iowa Code section 147.140(1)(a) requires that a plaintiff in a personal injury action alleging negligence in the practice of healthcare serve the defendant with a certificate of merit affidavit signed by an expert witness. This requirement extends to causes of action "for which expert testimony is necessary to establish a prima facie case." Iowa Code § 147.140(1)(a). The affidavit must be signed by the expert and set out the expert's familiarity with the applicable standard of care and its breach by the defendant. *Id.* § 147.140(1)(b). If a plaintiff does not "substantially comply" with the requirements of section 147.140(1), the defendant can move to dismiss with prejudice any cause of action requiring expert testimony to show a prima facie case. *Id.* § 147.140(6).

3

We begin by deciding whether the provisions of section 147.140 apply to Loper's claim. It is undisputed that Loper filed an action for personal injury against a healthcare provider.[1] Thus, the first two requirements for serving a certificate of merit affidavit are met.

The fighting issue is whether Loper's action concerns negligence in the practice of healthcare that requires expert testimony to show a prima facie case. The supreme court has recognized that some actions brought against healthcare providers involving routine care do not need expert testimony. *See generally Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 542–44 (Iowa 2022) (discussing cases from Iowa and persuasive authority that illustrate the distinction between actions that require expert testimony and those that do not). For example, in situations involving medical professionals providing "nonmedical, administrative, ministerial, or routine care . . . the standard is such reasonable care for patients as their known mental and physical condition may require," so expert testimony is not needed. *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 102 (Iowa 1971). The supreme court set out the test for the necessity of expert testimony in *Thompson v. Embassy Rehabilitation & Care Center*:

> If all the primary facts can be accurately and intelligibly described to the jury, and if they, as persons of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation, expert testimony is not required.

604 N.W.2d 643, 646 (Iowa 2000) (cleaned up).

---

[1] Section 148.140(7) states that "health care provider" means the same as defined in section 147.136A.

We turn then to whether Loper's claim requires expert testimony. Loper argues that a person of common understanding can decide whether she needed to be escorted out of the facility in a wheelchair after discharge based on her medical history, her symptoms, and the likelihood that she had nothing to eat or drink for several hours. We disagree. Addressing a similar claim, the supreme court held that whether a healthcare provider improperly supervised a patient based on the patient's condition "is beyond the understanding of ordinary jurors." *Struck*, 973 N.W.2d at 543 (affirming the dismissal of a petition under section 147.140 based on a claim that provider was negligent by failing to impose restraints or other safety measures to keep her from standing unattended and the patient stood, fell, and struck her chin on the floor); *accord Otero v. State*, No. 23-0519, 2024 WL 1553792, at *2 (Iowa Ct. App. Apr. 10, 2024) (affirming district court's finding that "questions . . . regarding evaluations by radiology technologists as to a patient's fall risk and what preventative measures must be taken to ensure that a patient at risk of a fall is not injured in a radiology procedure" are not within the knowledge and experience of an ordinary layperson and thus require expert testimony).

The district court likewise held that expert testimony is necessary to decide the standard of care in this case. Though it noted that "discharging a patient certainly appears at first glance to be a routine and ministerial task," the court found that whether "a patient needs to be discharged under supervision or with a wheelchair requires a personal assessment by their treating provider."

> Such assessment requires more than a listing of the patient's recent medical history. It requires an understanding of the patient's medical condition that is outside the common understanding of the jury. The hospital has no policy requiring wheelchair use or assistance upon discharge, and [Loper] has not alleged that such a routine policy should

exist as part of [SEIRMC]'s standard of care. Rather, [Loper] alleges that under her specific circumstances, with her medical history and symptoms at the time, [her healthcare provider] owed her the duty of care to provide a wheelchair and assistance upon discharge. The assessment [Loper] believes [her provider] should have made was a medical judgment, not part of routine or ministerial care. Rather, [Loper] alleges that under her specific circumstances, with her medical history and symptoms at the time, [her provider] owed her the duty of care to provide a wheelchair and assistance upon discharge. The assessment [she] believes [her provider] should have made was a medical judgment, not part of routine or ministerial care.

The court added that Loper does not know what caused her fall, so it is unreasonable to force the jury to find the cause and figure out whether her provider breached the standard of care without help from an expert witness. We agree that these conclusions are outside the common understanding of a jury and expert testimony is needed to show the professional standard of care for someone showing Loper's symptoms. Thus, a certificate of merit affidavit is required under section 147.140. Because Loper did not serve a certificate of merit affidavit as provided in section 147.140, the district court did not err in granting summary judgment for SEIRMC.

Loper asks us to consider whether a "clear and convincing" standard should be applied in determining whether expert testimony is needed to comply with Iowa Code section 147.140 in expedited civil actions. She raises this issue for the first time on appeal "as a question of policy appropriately reserved for consideration at the appellate level." But our well-established rules of error preservation require that an argument must be raised and decided by the district court before we can decide it on appeal. *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). We therefore decline to address

6

this argument.  Because we find her remaining arguments lack merit or need not be addressed after affirming the summary judgment ruling, we affirm.

**AFFIRMED.**

Ahlers, P.J., concurs; Sandy, J. dissents.

**SANDY, Judge** (dissenting).

The error in this case is not factual or procedural; it is categorical. By treating routine patient assistance as professional medical judgment, the majority applies Iowa Code section 147.140 (2023) to a claim the statute does not reach. In *Estate of Butterfield v. Chautauqua Guest Home, Inc.*, the Iowa Supreme Court made that boundary unmistakably clear—and it places Loper's claim outside of section 147.140. 987 N.W.2d 834, 845–46 (Iowa 2023).

In *Butterfield*, the Iowa Supreme Court emphasized that section 147.140 is not triggered merely because a defendant is a healthcare provider or because the alleged negligence occurred in the course of patient care. *Id.* at 840–41. Rather, the statute applies only when expert testimony is required to establish the standard of care or breach, not when a jury can evaluate the alleged negligence using ordinary knowledge and experience. *Id.* at 841. The court rejected a categorical approach and instead required a threshold inquiry into the nature of the conduct alleged. *Id.* And where the claim concerns routine care—such as physical handling, supervision, or assistance of a vulnerable person—the absence of a certificate of merit does not mandate dismissal. *Id.*

That is precisely what occurred here. Like in *Butterfield*, Loper does not allege that a medical professional misdiagnosed her, prescribed improper medication, or exercised flawed clinical judgment. She does not challenge medical decision-making or care. Instead, she alleges that after receiving care, she was left without assistance despite her age and physical condition, and that she fell while attempting to exit the facility. That allegation concerns

8

routine patient assistance and supervision, not professional medical negligence.

Moreover, *Butterfield* is not an outlier in our case law. In *Kastler v. Iowa Methodist Hospital*, the Iowa Supreme Court drew a foundational distinction between professional medical judgment and routine, custodial hospital care. 193 N.W.2d 98, 101–02 (Iowa 1971). The court held that when the alleged negligence concerns routine patient assistance—there, permitting a patient with known fainting spells to shower unattended—the applicable standard is ordinary reasonable care in light of the patient's known condition, not a professional standard requiring expert testimony. *Id.* at 101–03. Critically, the *Kastler* court rejected the notion that conduct becomes "professional" simply because it occurs in a hospital or involves patient care. *Id.* at 101. Where a jury can assess the alleged negligence using common knowledge and experience, the claim lies outside the realm of professional malpractice. *Id.* at 102. That categorical boundary—between medical judgment and routine care—remains settled Iowa law regardless of the latter enacted certificate of merit. *See Butterfield*, 987 N.W.2d at 841.

Likewise, *Cockerton v. Mercy Hospital Medical Center* reaffirmed *Kastler*'s framework. 490 N.W.2d 856, 859–60 (Iowa Ct. App. 1992). There, we held that a patient's claim arising from a fainting episode during a routine x-ray procedure did not require expert testimony because the alleged negligence concerned ordinary patient handling and supervision. *Id.* at 859. The court emphasized that even where trained medical personnel are involved, not all conduct is professional in nature; routine assistance, restraint, and monitoring remain subject to an ordinary-care standard when they can be evaluated by lay jurors. *Id.* at 859–60. *Cockerton* reinforces that

9

our courts consistently resist transforming routine patient-care claims into medical-judgment cases by default.

Respectfully, I believe the majority's reliance on *Struck v. Mercy Health Services-Iowa Corp.*, 973 N.W.2d 533 (Iowa 2022) is misplaced. *Struck* is materially different. There, the plaintiff expressly alleged professional negligence, including improper management of her medication and inadequate supervision in light of the unique risks created by her medication. *Struck*, 973 N.W.2d at 536–38. The court held that those claims required expert testimony because they turned on medical judgment beyond the understanding of lay jurors. *Id.* at 542–44. In addition, Struck expressly pleaded professional negligence in alleging a healthcare-provider-patient relationship. *See id.* Those allegations, on their face, required expert testimony to establish the medical standard of care and breach. The court repeatedly emphasized that Struck pleaded herself into section 147.140 by choosing a professional-negligence theory. *Id.* at 536–38.

But Loper makes no such allegations. Her claim does not depend on assessing medication interactions or clinical standards of care. It depends on whether ordinary care required providing physical assistance to a patient in her condition. By equating Loper's claim with *Struck*, the majority effectively treats routine patient assistance as medical judgment as a matter of law. That approach collapses the distinction *Butterfield* carefully preserved and risks converting section 147.140 into a categorical gatekeeping statute for all claims arising in healthcare settings. But the *Butterfield* court expressly rejected such proposition. 987 N.W.2d at 842–43, 845–46.

In *Butterfield*, the negligence claim centered on:

- physical handling of a resident,

- repositioning,

- supervision, and

- response to obvious physical risks (falls, pressure injuries).

Yet the supreme court held section 147.140 did not apply because expert testimony was not required to establish the standard of care or breach. *Id.* at 845–46. Similar to *Butterfield*, here we have:

- no allegation of misdiagnosis,

- no allegation of improper medication, and

- no challenge to medical decision-making.

The negligence claim is almost identical to *Butterfield*: a failure to assist a vulnerable patient ambulate resulting in an injurious fall. Those allegations were not framed as medical malpractice in diagnosis or treatment, but as failures in basic patient care and supervision. In both cases, the alleged negligence concerns how the patient was physically handled and supervised, not professional medical decision-making.

In my view, this case belongs on the *Butterfield* side of the line. When a statute designed to screen medical-negligence claims is applied to bar a routine-care claim, the statute is no longer being applied—it is being expanded. *Butterfield* does not permit that expansion, and neither should we.